

# IN THE
# Court of Appeals of Indiana

**A.F.,**

*Appellant-Respondent*

v.

**State of Indiana,**

*Appellee-Petitioner*



FILED

Nov 26 2024, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

November 26, 2024

Court of Appeals Case No.
24A-JV-1326

Appeal from the Vanderburgh Superior Court

The Honorable Gary Schutte, Judge
The Honorable Renee A. Ferguson, Magistrate

Trial Court Cause No.
82D04-2404-JD-702

**Opinion by Judge Pyle**

Judges Weissmann and Felix concur.

**Pyle, Judge.**

## Statement of the Case

A.F. ("A.F.") appeals the juvenile court's order that granted his wardship to the Indiana Department of Correction ("the DOC"). A.F. raises two issues, which we consolidate and restate as whether the juvenile court abused its discretion in granting A.F.'s wardship to the DOC where no predispositional report had been completed. Concluding that the juvenile court abused its discretion when it granted A.F.'s wardship to the DOC without ordering or considering a statutorily required predispositional report, we reverse and remand with instructions for the juvenile court to order the preparation of a predispositional report and to consider that report when redetermining A.F.'s disposition.

We reverse and remand with instructions.

## Issue

> Whether the juvenile court abused its discretion in granting A.F.'s wardship to the DOC without ordering or considering a statutorily required predispositional report.

## Facts

In April 2024, the State filed a petition alleging that A.F. was a delinquent child for committing acts that would constitute Class A misdemeanor criminal

trespass,[1] Class B misdemeanor disorderly conduct,[2] and Class B misdemeanor unauthorized entry of a motor vehicle[3] if committed by an adult. The State alleged that A.F. had committed these acts while he was placed at Damar Services, Inc. ("Damar") for a diagnostic evaluation.

[4] At a May 2024 hearing, A.F. admitted the allegations in the petition. Specifically, A.F. admitted that he had: (1) gone into a maintenance building and on top of a roof without Damar's permission; (2) engaged in fighting or tumultuous conduct at Damar; and (3) entered a vehicle belonging to Damar without Damar's permission. The juvenile court found that A.F. was a delinquent child and asked the probation officer ("the probation officer") if she was ready to proceed with A.F.'s disposition. The probation officer responded that she was ready to proceed and that her recommendation was that A.F. be placed in the DOC.

[5] A.F.'s counsel asked the juvenile court to hold a dispositional hearing at a later date and to "get the report and everything." (Tr. Vol. 2 at 9). A.F.'s counsel also asked if the juvenile court or the probation officer had received from Damar the results of A.F.'s diagnostic evaluation. The probation officer responded, "We were able to complete that and we did get a diagnosis of mood

---

[1] IND. CODE § 35-43-2-2.

[2] I.C. § 35-45-1-3.

[3] I.C. § 35-43-4-2.7.

disorder and conduct disorder." (Tr. Vol. 2 at 9). A.F.'s counsel asked for a copy of the evaluation.

[6] The juvenile court held the dispositional hearing the following week and asked the probation officer for her dispositional recommendation. The probation officer responded that there were "four pages listed in [her] preliminary inquiry of [A.F.]'s poor behaviors" while at Damar. (Tr. Vol. 2 at 12). She also reiterated that A.F. had been diagnosed with mood and conduct disorders. The probation officer again recommended that A.F. be placed in the DOC. After the probation officer had made her recommendation, the juvenile court ordered that the probation officer's "report to the Court [be] incorporated as part of the record." (Tr. Vol. 2 at 14). It appears that the report to which the juvenile court was referring was the preliminary inquiry that the probation officer had referenced during her testimony. A.F.'s counsel asked the juvenile court to wait and see if a gatekeeper could secure residential placement for A.F.

[7] After hearing the probation officer's recommendation and A.F.'s request, the juvenile court stated, in relevant part, as follows:

> I don't know, I'm not an expert, I don't know if this is strictly
> criminal behavior or if this is a combination of criminal, mental
> health, emotional health, but the fact of the matter is, this Court
> has no other alternative available to it except for the Department
> of Correction.

(Tr. Vol. 2 at 14-15). That same day, the juvenile court issued a written order that granted wardship of A.F. to the DOC. The juvenile court's order specifically provided that the juvenile court had "reviewed the predispositional

report[.]"  (App. Vol. 2 at 26).  In addition, a May 10, 2024 entry in the Chronological Case Summary ("the CCS") also provides that the probation officer had filed a predispositional report and that the juvenile court had considered it.

[8]  A.F. now appeals.

## Decision

[9]  A.F. argues that the juvenile court abused its discretion in granting A.F.'s wardship to the DOC without ordering or considering a statutorily required predispositional report.  We agree.

[10]  At the outset, we note that we have found nothing in the record provided to us on appeal to indicate that A.F. waived the preparation of the predispositional report.  Rather, as set forth above, A.F.'s counsel specifically requested the preparation of the report.  In addition, we have found nothing in the record provided to us on appeal to indicate that the juvenile court ordered the preparation of a predispositional report.  Further, although the juvenile court's written order and the CCS both reference a predispositional report, the State acknowledges that "there is nothing in the [appellate] record that shows that a predispositional report was prepared[.]"  (State's Br. 12).  We, therefore, proceed under the assumption that the juvenile court did not order a predispositional report before holding A.F.'s dispositional hearing and had no predispositional report to consider when it issued its dispositional order

awarding A.F.'s wardship to the DOC. We now turn to A.F.'s argument that the juvenile court abused its discretion.

[11] "The disposition of a juvenile adjudicated a delinquent is a matter committed to the juvenile court's discretion, subject to the statutory considerations of the child's welfare, community safety, and the policy favoring the least harsh disposition." *Q.H. v. State*, 216 N.E.3d 1197, 1200 (Ind. Ct. App. 2023). We review the juvenile court's disposition for an abuse of discretion, which occurs if its decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable inferences that may be drawn from them. *Id.* In determining whether a juvenile court has abused its discretion, we neither reweigh the evidence nor judge witness credibility. *Id.*

[12] "We start with the premise that the nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal." *Id.* (cleaned up). "For this reason[,] the statutory scheme of dealing with minors is vastly different than that directed to an adult who commits a crime." *Id.* (cleaned up). "Juvenile courts have a variety of placement options for children with delinquency problems." *Id.*

[13] INDIANA CODE § 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree in a juvenile matter:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:

(1) is:

    (A) in the least restrictive (most family like) and most appropriate setting available; and

    (B) close to the parents' home, consistent with the best interest and special needs of the child;

(2) least interferes with family autonomy;

(3) is least disruptive of family life;

(4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

(5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

I.C. § 31-37-18-6.

[14] Further, in the statutory chapter concerning juvenile delinquency factfinding hearings, INDIANA CODE § 31-37-13-2 provides that if a court finds that a child is delinquent, the court shall, enter judgment accordingly, order a predispositional report, schedule a dispositional hearing, and complete a dual status screening tool on the child. Further, in the statutory chapter concerning predispositional reports, INDIANA CODE § 31-37-17-1 provides that upon finding that a child is delinquent, the court shall order a probation officer to complete a predispositional report that contains certain specified information. This information includes, among other things: (1) a statement of the needs of the child for care, treatment, rehabilitation, or placement; (2) a recommendation for the care, treatment, rehabilitation, or placement of the child; (3) a statement of the department's concurrence with or its alternative proposal to the probation officer's predispositional report as provided in

INDIANA CODE § 31-37-17-1.4; and (4) the results of the validated risk and needs assessment tool that the probation officer conducted with the child.

[15] In addition, the pre-dispositional report prepared by a probation officer in a delinquency proceeding must contain "[a] description of all dispositional options considered in preparing the report." I.C. § 31-37-17-6.1(a)(2). The predispositional report must also include "[a]n evaluation of each of the [dispositional] options considered in relation to the [recommended] plan of care, treatment, rehabilitation, or placement" for the child. I.C. § 31-37-17-6.1(a)(3).

[16] Here, the juvenile court clearly failed to follow the mandates set forth in the juvenile statutes. Specifically, the juvenile court failed to order the preparation of a predispositional report and proceeded to disposition without considering a predispositional report.

[17] We addressed a similar situation in *Q.H.*, where we reversed the juvenile court's commitment of Q.H. to the DOC because the juvenile court "could not [have] reasonably determine[d] under INDIANA CODE § 31-37-18-6 that commitment to the DOC was the least restrictive disposition consistent with Q.H.'s best interests and community safety" where the probation officer's predispositional report had not met the statutory requirements of INDIANA CODE § 31-37-17-6.1. *Q.H.*, 216 N.E.3d at 1204-05. Specifically, we concluded that the probation officer's predispositional report had not met the statutory requirements of INDIANA CODE § 31-37-17-6.1 because the report had failed to evaluate

placement options within the context of Q.H.'s needs, including his cognitive and psychological challenges that had been documented in his educational and detention center records. *Id.* at 1200. We further concluded that when considering the appropriate sanction for Q.H., the juvenile court had simply adopted the defective predispositional report and had not broadened its inquiry to include consideration of Q.H.'s cognitive and psychological difficulties. *Id.* Based on the juvenile court's consideration of this defective predispositional report, we concluded that the juvenile court could not have reasonably determined under INDIANA CODE § 31-37-18-6 that commitment to the DOC was the least restrictive disposition consistent with Q.H.'s best interests and community. *Id.* at 1204-05. As a result, we reversed Q.H.'s commitment to the DOC and remanded the case to the juvenile court for proceedings consistent with our opinion. *Id.*

[18]     Here, because the juvenile court did not order a predispositional report as required by INDIANA CODE § 31-37-13-2 and INDIANA CODE § 31-37-17-1, the juvenile court did not have before it a predispositional report that incorporated the analysis required by INDIANA CODE § 31-37-17-6.1. Specifically, the juvenile court did not have before it a predispositional report that evaluated placement options within the context of A.F.'s needs. We find this lack of a predispositional report especially troubling where A.F. had just completed a diagnostic evaluation, the results of which should have been set forth in the predispositional report. Specifically, a predispositional report could have

provided the juvenile court with guidance regarding whether A.F.'s criminal behavior had resulted from mental or emotional health.

[19] In sum, without a predispositional report that evaluated placement options within the context of A.F.'s needs, the juvenile court could not have reasonably determined under INDIANA CODE § 31-37-18-6 that commitment to the DOC was the least restrictive disposition consistent with A.F.'s best interests and community. *See Q.H.*, 216 N.E.3d at 1204-05. Accordingly, we reverse the juvenile court's commitment of A.F. to the DOC and remand the case to the juvenile court with instructions to comply with the juvenile statutes, order the completion of a predispositional report, and consider that report when redetermining A.F.'s disposition. *See id*. at 1205.

[20] Reversed and remanded with instructions.

Weissmann, J., and Felix, J., concur.

ATTORNEY FOR APPELLANT

John R. Worman
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Kathy Bradley
Deputy Attorney General
Indianapolis, Indiana